Michael Machat, Esq. SB#109475
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com

Attorneys for Plaintiff
Pacific Edge Marketing Group, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PACIFIC EDGE MARKETING GROUP, INC, <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSAL BEVERAGE IMPORTERS, LLC, and BAD HOMBRE IMPORTING, LLC <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DEMAND FOR JURY TRIAL** |

Plaintiff Pacific Edge Marketing Group, Inc., hereby alleges and asserts:

I. **JURISDICTION AND VENUE**

1. Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of Plaintiff's trademark in violation of the Lanham Act.

**COMPLAINT**

2. This action arises under the Trademark Laws of the United States, including, particularly, Section 43 of the Lanham Act, 15 U.S.C. § 1125. Jurisdiction is conferred on this Court by 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2).

## II. THE PARTIES

4. Plaintiff, Pacific Edge Marketing Group, Inc. ("Pacific Edge") is a California Corporation based out of Westlake Village, in Ventura County, California. Pacific Edge is the brand owner (and trademark registrant) of BAD HOMBRES tequila.

5. Defendant Universal Beverage Importers, LLC ("UBI") is, according to their website, a Delaware based LLC, that imports alcoholic beverages, including BAD HOMBRE tequila ("the accused product") and distributes it in seventeen states including California.

6. Defendant Bad Hombre Importing, LLC, ("Bad Hombre Importing") is a California based LLC with offices in Santa Monica, California.

## III. FACTS

**A. Plaintiff Pacific Edge's BAD HOMBRES trademark.**

7. On March 28, 2017, Pacific Edge filed a trademark application for the trademark BAD HOMBRES in international class 33 for Distilled Spirits and Distilled Blue Agave Liquor.

8. On February 27, 2024, the US Patent and Trademark Office issued trademark registration number 7,316,441 to Pacific Edge for the BAD HOMBRES trademark. A copy of this trademark registration is attached as Exhibit A.

9. Subsequent to Pacific Edge's filing of its trademark registration in 2017, Defendants began using the phrase BAD HOMBRE (singular) as a trademark in connection with tequila. Specifically, UBI created a brand of tequila and labeled it BAD HOMBRE.

10. Recently Pacific Edge noticed BAD HOMBRE offered for sale online at retail stores such as Total Wine, Liquorama and Napa Cab.

11. Pacific Edge is a licensed importer and distributor of various spirits, including tequila, and has distribution operations in California, Nevada, Arizona, Washington State, and Colorado, from which it sells its wine and spirits products to retail outlets. Pacific Edge sells its alcohol products to distributors in the other states where it does not self-distribute.

12. Pacific Edge sells its BAD HOMBRES tequila to Liquorama. After noticing that the accused product BAD HOMBRE was on sale at Liquorama, Pacific Edge's representative ordered two bottles of the infringing product online. The clerk at Liquorama made a mistake and rather than ship two bottles of the accused product, BAD HOMBRE, the clerk shipped two bottles of the genuine BAD HOMBRES to Pacific Edge's representative.

13. UBI's website and the attached Certificate of Label Approvals, Exhibit B, confirm that UBI is the importer of the accused product.

14. Bad Hombre Importing, is a distributor of alcoholic products, including tequila. As it's name suggests, Bad Hombre is a bad actor, using a name confusingly similar to Pacific Edge's BAD HOMBRES trademark.

15. Bad Hombre Importing filed its Articles of Organization after Pacific Edge filed its trademark application for BAD HOMBRES.

16. The law is clear that when one files an intent to use application that matures into a trademark registration, the priority date for purposes of determining prior use is the date of filing. In this case, Pacific Edge's priority

date is March 28, 2017. Each defendant began using BAD HOMBRE as a trademark after Marcch 28, 2017, and therefore is an infringer.

17. Defendants use the words "BAD HOMBRE" to draw attention to their business and tequila products, to improve the marketability and to enhance sales of their infringing product.

18. Defendants' intentional and wrongful infringing acts are harming Pacific Edge's brand's reputation and are interfering with Pacific Edge's marketing plans for its trademarked brand BAD HOMBRES.

19. If Defendants are not stopped from marketing their infringing product by using Plaintiff's BAD HOMBRES mark, or the confusingly similar singular version of the mark, BAD HOMBRE,—then consumers will likely be confused about the source and origin of Defendants' products and services and mistakenly conclude that Defendants' products or services are associated with Plaintiff and/or its licensees.

20. Alternatively, if Defendants are not stopped from using Plaintiff's BAD HOMBRES mark—or the confusingly similar singular mark, BAD HOMBRE—then consumers will likely be confused about the source of Plaintiff's or its licensees' products and services and mistakenly conclude that Plaintiff's or its licensees' products or services are associated with Defendants.

21. Indeed the clerks at Liquorama were confused and sent out Plaintiff's BAD HOMBRES product to someone that specifically ordered the infringing BAD HOMBRE product off Liquorama's website.

## COUNT I
### VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)

22. Plaintiff realleges the allegations in paragraphs 1 through 21.

23. Defendants use of "BAD HOMBRE," on the packaging and description and other marketing for its alcohol products, is nearly identical to Plaintiff's trademark BAD HOMBRES. Because the the marks are nearly

identical but for the use of the "s", the marks engender the same connotation and overall commercial impression when considered in connection with Defendants' goods and services and with Plaintiff's goods and services.

24. The goods and services for which Defendants unlawfully use the BAD HOMBRE mark is identical to the goods and services for which Plaintiff uses its BAD HOMBRES mark giving rise to the mistaken belief that the goods and services of the parties have the same source.

25. The likelihood of confusion is even greater given that both Plaintiff and defendants sell their alcohol products online and in the same retail stores.

26. Furthermore, the channels of trade and class(es) of purchasers are the same for both Plaintiff's and Defendants' goods and services, and the price of Defendants' BAD HOMBRE tequila and Plaintiff's BAD HOMBRES tequila is similar, further resulting in a likelihood of confusion.

27. Defendants' use of the words "BAD HOMBRE" so closely resembles Plaintiff's products and services that the public is likely to be confused and deceived, and to assume erroneously that Defendants' infringing tequila is produced by Plaintiff or under Plaintiff's direction; that Defendants' tequila offerings are part of Plaintiff's family of brands; or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

28. Alternatively, Defendants' marketing and advertising efforts are likely to mislead consumers to believe that Plaintiff's tequila may be the unauthorized use of Defendants' trademarks. If Defendants continue their wrongful acts, consumers are likely to be misled to believe that Plaintiff is misusing the BAD HOMBRES mark.

29. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or services offered or sold by Defendants.

30. Plaintiff has no control over the nature and quality of the goods and services offered and sold by Defendants and its licensees. Any failure, neglect, or default by Defendants or its licensees in providing such products or services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's continuing efforts to protect its outstanding reputation and further build that reputation. Said failure, neglect, or default will irreparably harm Plaintiff by causing loss of revenue to Plaintiff and loss of value of Plaintiff's considerable expenditures to promote its goods and services under the BAD HOMBRES mark.

31. Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded under the name BAD HOMBRE and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and sold products and services using the BAD HOMBRES mark (or marks confusingly similar to) through persons not authorized by, employed by, or associated in any way with Plaintiff, and they have used the BAD HOMBRES trademark as a false designation and false representation for alcoholic beverage products.

32. None of Defendants' activities described in this complaint have been authorized by Plaintiff. Defendants' unauthorized use of Plaintiff's trademarks and trade names in interstate commerce, or commerce substantially affecting interstate commerce, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names. Such activities are likely to cause confusion, mistake, and to deceive the public at large.

33. Upon information and belief, Defendants have acted with the unlawful purpose of:

a. Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

b. Soliciting Plaintiff's customers and potential customers, and attempting to sell and selling to such customers goods and services marketed under the BAD HOMBRES and/or BAD HOMBRE marks through persons not authorized by, employed by, or associated in any way with Plaintiff;

c. Inducing others to infringe Plaintiff's trademarks and trade names; and

d. Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized by, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

34. Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

35. If Defendants are allowed to continue marketing and selling the accused goods and services, Plaintiff will be damaged as alleged in this complaint and the Defendants will profit thereby. Furthermore, unless the Court permanently enjoins Defendants' infringing conduct, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

36. This hijacking of Plaintiff's BAD HOMBRES trademarks improves the marketability of Defendants' alcohol products as the use of the words "BAD HOMBRE" make Defendants' website and product offerings more interesting. It has led to more people hearing about Defendants' products,

leading them to come in and try other products sold by Defendants, thus lowering Defendants' costs to advertise.

37. Defendants are acting willfully and with an intent to use or abuse the goodwill Plaintiff has worked hard to develop. Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

38. The intentional nature of defendant's acts makes this an exceptional case under 15 U.S.C. §1117(a).

## COUNT II
## VIOLATION OF LANHAM ACT 15 U.S.C. §1114

39. Plaintiff repeats each allegation contained in paragraphs 1 through 38 as though set forth herein at length.

40. Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered trademark BAD HOMBRES.

41. Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, be deceived, and erroneously assume that Defendants' BAD HOMBRE branded goods and services, as packaged, advertised, promoted, and sold, are Plaintiff's, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

42. Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff. Furthermore, Plaintiff has not approved any of the goods or services offered or sold by Defendants.

43. Defendants are acting willfully and with an intent to ride on, step on, or demolish the goodwill Plaintiff has worked hard to develop. Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their accused

products will hinder the future commercial success of Plaintiff's BAD HOMBRES tequila. Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiff, have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiff at common law.

B. That the Court adjudge and decree that Defendants have infringed Plaintiff's registered BAD HOMBRES trademark.

C. That the Court adjudge and decree that Defendants unlawfully diluted and diminished Plaintiff's rights in its BAD HOMBRES.

D. That the Court adjudge and decree that Defendants unlawfully Induced others to infringe upon Plaintiff's trademark.

E. That the Court permanently enjoin Defendants, its agents, servants, employees, attorneys, and all persons acting in concert or participation with them or any of them from:

    a. Using BAD HOMBRE, BAD HOMBRES, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or words, trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and promotion of food or beverage products and accessories;

    b. Selling, offering to sell, marketing, distributing, advertising, and promoting any food or beverage product, good, or service with the words BAD HOMBRE or BAD HOMBRES displayed on any product, packaging, advertising, or promotional materials;

    c. Representing directly or indirectly by words or conduct that any food or beverage product, good, or service offered for sale, sold, promoted, or advertised by Defendant is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

    d. Aiding or abetting in unfair competition against Plaintiff;

    e. Aiding or abetting in false advertising; and

    f. Inducing others to engage in any of these aforementioned acts.

F. That the Court award an amount to be determined at trial, but at least an amount equivalent to treble the amount of Defendants' illicit profits *(including profits made by Defendants from all beverage sales since they used Plaintiff's mark to bring customers in to buy other alcohol beverages)*, or Plaintiff's lost profits, whichever is greater.

G. That the Court award an amount to be determined at trial but at least an amount equal to the cost of prospective corrective advertising.

H. That the Court award Judgment against Defendants for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

I. That the Court order such other further and different relief as the nature of this action may require and as the Court may deem just and proper.

J. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

...

...

# DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all triable issues raised by the Complaint.

DATED this 12th day of September, 2025.

                        Respectfully submitted by:

*Michael Machat*

Michael Machat, Esq.
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com
*Counsel for Plaintiff*